IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KATHLEEN BETTS,
     Plaintiffs,

vs.                                      Case No.:  3:14cv33/MCR/EMT

WENDELL HALL, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a non-prisoner proceeding pro se and in forma pauperis, has filed a Fifth Amended Complaint under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and 14141 (doc. 36).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that Plaintiff's claims should be dismissed.

I.     BACKGROUND

Plaintiff names eleven Defendants in this case:  Wendell Hall, Sheriff of Santa Rosa County, Florida; Bill Eddins, State Attorney for the First Judicial Circuit of Florida; Patrick Vega, a lieutenant with the Santa Rosa County Sheriff's Office ("SRCSO"); six deputies with the SRCSO, Deputy Jason Bondovitz, Deputy Heath Hell, Deputy Johnson, Deputy Reeves, Deputy Tucker, and Deputy Bringerhoff; Dr. Epstein, a doctor for the Santa Rosa County Jail ("Jail"); and "Auxilliary [sic] Deputy" Ritchie Starr (doc. 36 at 1–3).[1]  In her 64-page complaint, Plaintiff relates a history of her involvement with the SRCSO during the pendency of her very contentious divorce between

_____

[1]The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

2006–2011 (*id.* at 4–64). She claims that Lieutenant Vega and the six named deputies engaged in a "pattern and practice" of harassment, in violation of 42 U.S.C. § 14141 (*id.* at 22, 24–47). She also claims that the officers violated and conspired to violate her constitutional rights, including her rights to due process and equal protection, her right to be free from unreasonable searches and seizures, and her right to bear arms (*id.* at 22, 48–50, 53–56). Plaintiff claims that Sheriff Hall and State Attorney Eddins, sued only in their official capacities, are liable for the conduct of their subordinates (*id.* at 56–61). She claims that Dr. Epstein engaged in battery, medical negligence, and fraud during one period of her detention at the Jail (*id.* at 22, 50–53). Plaintiff brings a claim against all Defendants for "neglect to prevent" under 42 U.S.C. § 1986, and "in vindication of civil rights" under 42 U.S.C. § 1988 (*id.* at 23, 62–63). In addition to her federal constitutional claims, Plaintiff brings state tort claims of malicious prosecution and infliction of severe emotional distress (*id.* at 23, 62). She seeks compensatory and punitive damages, as well as declaratory relief "to state what the Defendants did was wrong," and an injunction "to prevent further such actions against the Plaintiff" (*id.* at 22). Plaintiff's stated purpose for bringing this civil action is to "clean up" her arrest record to enable her to become financially independent following the divorce (*id.* at 24–27).

II.    ANALYSIS

Because Plaintiff is proceeding in forma pauperis, the court may dismiss this case if satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.* at 327, 109 S. Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992). Within the former are those cases in which it is either readily apparent that a complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit; within the latter are those cases describing scenarios clearly removed from reality. Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990) (citing Neitzke, 490 U.S. at 327).

The language of subsection 1915(e)(2)(B)(ii) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and thus dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Id. at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679. Consistent with the foregoing precepts, in civil rights cases more than "mere conclusory notice pleading" is required, and a complaint is subject to dismissal "as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir.

2003) (quotation and citation omitted).  A complaint is also subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim.  Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022 (11th Cir. 2001); *see also* Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (reiterating that principle).

    A.    Claims under 42 U.S.C. § 14141

Plaintiff claims that the conduct of Lieutenant Vega and the six deputies constitutes a pattern and practice of police harassment under 42 U.S.C. § 14141.  Section 14141 of Title 42 provides, in relevant part:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

42 U.S.C. § 14141(a).  However, the statute does not provide a private right of action; instead, it provides for a cause of action to be brought by the United States Attorney General in the name of the United States.  42 U.S.C. § 14141(b).  Plaintiff cannot bring a suit under § 14141 as a private individual.  *See* Rangel v. Reynolds, 607 F. Supp. 2d 911, 925 n.6 (N.D. Ind. 2009) (holding that only the United States Department of Justice may bring an action under § 14141); *see also, e.g.,* Greer v. Hillsborough Cnty. Sheriff's Dep't, No. 8:04-CV2034T23MSS, 2005 WL 2416031, at *2 (M.D. Fla. Sept. 30, 2005) (unpublished) ("no private right of action exists under 42 U.S.C. § 14141").  Therefore, Plaintiff's claims of a "pattern and practice" of police misconduct, under §14141, must be dismissed as frivolous.

    B.    Federal Claims Barred by Statute of Limitations

Additionally, several of Plaintiff's federal claims are barred by the statute of limitations. Because Section 1983 does not contain a specific statute of limitations, 42 U.S.C. § 1988 directs courts to select and apply the most appropriate or analogous state statute of limitations. Additionally, the Supreme Court has stated that courts should select the statute of limitations in each state that applies to tort actions for the recovery of damages for personal injury.  *See* Wilson v. Garcia, 471 U.S. 261, 276, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985).  The Court has also stated that

the statute, once selected, should govern all § 1983 actions arising in that state.  *Id.* at 275; *see also* Jones v. Preuit & Mauldin, 763 F.2d 1250,1252 (11th Cir. 1985) (citations omitted).  The applicable statute of limitations in Florida is four (4) years.  *See* Baker v. Gulf & W. Indus., 850 F.2d 1480, 1481 (11th Cir. 1988); *see also* Fla. Stat. § 95.11(3) (1991).  Although the court applies Florida law in this regard, federal law determines the date on which the statute begins to run.  Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003). The Eleventh Circuit has held that the statute of limitations begins to run from the date "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for [her] rights." *Id.* (citation omitted).  The cause of action accrues even though the full extent of the injury is not then known or predictable.  *See* Wallace v. Kato, 549 U.S. 384, 391, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007).  "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that or she had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*  The running of the statute of limitations is a sufficient ground to justify dismissal of a claim.  Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003); Clark v. Ga. Pardons and Paroles Bd., 915 F.2d 636, 641 n.2 (11th Cir. 1990).

Under the "continuing violation" doctrine, a plaintiff may sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period.  *See* Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006) (citation omitted).  However, the Eleventh Circuit has distinguished between the present, continuing effects or consequences of a one-time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does.  *Id.* at 1335 (citations omitted).  Second, the court has limited application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred.  *Id.*  "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Id.* (internal quotation marks and citations omitted).

   1. Claims Arising from Conduct by Deputy Bondovitz on May 19, 2006 (Fifth Amended Complaint, ¶¶ 1–6)

Plaintiff alleges on May 19, 2006, her then-husband ("Mr. Betts") shoved her in the kitchen of their home, so she ran from the home and started walking to her beach house, which had been damaged during a hurricane.  She alleges Deputy Bondovitz stopped by the side of the Navarre Beach Bridge.  She alleges she was crying and told Bondovitz that Mr. Betts had been abusing her. Plaintiff alleges Deputy Bondovitz told her that the beach house where she intended to go had been declared uninhabitable, and he offered to take her to her mother-in-law's house nearby instead. Plaintiff alleges Bondovitz took her to her mother-in-law's house in his patrol car.

These facts do not state a violation of Plaintiff's constitutional rights.  Moreover, any claim challenging the constitutionality of Deputy Bondovitz's conduct accrued on May 19, 2006, because on that date, the facts which would allegedly support a cause of action would have been apparent to a person with a reasonably prudent regard for her rights.  Plaintiff filed the instant federal action on January 24, 2014, more than four years after the statute of limitations began to run.  Therefore, Plaintiff's claims against Deputy Bondovitz for his conduct on May 19, 2006, should be dismissed.

2.      Claims Arising from Arrest by Deputy Reeves on May 20, 2006 (Fifth Amended Complaint ¶¶ 7–12, 88)

Plaintiff alleges on May 20, 2006, she and Mr. Betts were in their home when he announced he was going away for the evening and began packing their computer equipment.  She alleges she told him she needed the computer, and he called law enforcement and reported that she was threatening him.  Plaintiff alleges Mr. Betts left the house "against [her] wishes," and again called law enforcement and reported that she hit him in the head with a computer monitor.  Plaintiff alleges deputies responded to the scene, and Mr. Betts filled out a police report.  She alleges she told deputies she did not hit him with a computer monitor, but Deputy Reeves arrested her and took her to the Jail.  Plaintiff alleges Mr. Betts was granted a 72-hour ex parte injunction.  Plaintiff alleges she was released on May 23, 2006, and ordered to wear an ankle bracelet as a condition of her release.  She alleges in June of 2006, Mr. Betts told the State Attorney's Office that he did not tell the truth about the computer monitor.  Plaintiff alleges the criminal charge against her was eventually dropped.

In an arrestee's § 1983 action against a law enforcement officer alleging unlawful arrest and detention without legal process, *i.e.*, without an arrest warrant, the limitations period for a § 1983

suit begins to run when the alleged false imprisonment ends, that is, once the arrestee became held pursuant to legal process, for example, when he or she appears before a judicial officer and is bound over for trial.  *See* Wallace, 549 U.S. at 391.  The court takes judicial notice of information available on the electronic database maintained by the Clerk of Court for Santa Rosa County, Florida, http://www.santarosaclerk.com (Search Court Records).[2]  The docket entries in that database indicate that the conduct underlying the May 2006 arrest was prosecuted in State v. Betts, Case No. 2006-MM-000958.  Plaintiff was arrested on May 20, 2006, on a charge of battery (domestic violence), and bound over on May 22, 2006.  Therefore, the limitations period for Plaintiff's claim against Deputy Reeves accrued on May 22, 2006.  Plaintiff acknowledges she appeared before a judicial officer, but she suggests it was not until May 23, 2006.  Regardless of whether the accrual date is May 22 or 23, 2006, Plaintiff did not file this lawsuit until January of 2014, well more than four years later.  Further, even if Plaintiff's arrest and detention in May of 2006 continues to have effects on her into the future, the continuing violation doctrine does not apply, because a new act has not occurred every time she experiences one of those continuing effects.  Therefore, Plaintiff's claims against Deputy Reeves are barred by the statute of limitations.

      3.     Claims Arising from Home Entry and Detention by Lieutenant Vega on February 6, 2008 (Fifth Amended Complaint, ¶¶ 13–15, 22–24, 90)[3]

Plaintiff alleges on February 6, 2008, Lieutenant Vega entered her home, asked her a few questions (which Plaintiff characterizes as "detention"), looked around the home, placed telephone calls, and then left approximately 10–15 minutes after entering.  Any claim challenging the constitutionality of Lieutenant Vega's conduct accrued on February 6, 2008, because on that date,

---

[2] *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

[3] Plaintiff alleges the date of Lieutenant Vega's conduct as February 6, 2007 in one part of her complaint (*see* Fifth Amended Complaint, ¶¶ 13, 76, 90) and as February 6, 2008 in another part (*see id.*, ¶¶ 22, 90).  The court construes the facts liberally and in the light most favorable to Plaintiff; therefore, the court construes the date of Vega's conduct as February 6, 2008.

the facts which would support a cause of action would have been apparent to a person with a reasonably prudent regard for her rights.  Plaintiff waited more than four years from that date to file the present action.  Therefore, her claims against Lieutenant Vega regarding his entry into the home on February 6, 2008, are barred by the statute of limitations.

        4.     Claims Arising from Arrest on April 28, 2008 by Deputy Bodnovitz (Fifth Amended Complaint ¶¶ 29–34, 91)

Plaintiff alleges on April 9, 2008, the judge who presided over the divorce proceedings signed a stipulated agreement pursuant to which Mr. Betts received temporary possession of the marital home and custody of their children.  Plaintiff alleges the agreement provided that she could visit the children with Mr. Betts's approval.  She alleges Mr. Betts had a domestic violence injunction against her at that time, which prohibited her from having unauthorized contact with him. She alleges on April 28, 2008, Mr. Betts told her she could meet him at the marital home to visit the children, but as soon as she arrived, Mr. Betts called Deputy Bondovitz and reported that Plaintiff was violating the injunction.  She alleges she drove to her mother-in-law's home and, minutes later, Deputy Bondovitz arrested her for violating the injunction.  She alleges she was released from the Jail, and left for North Carolina on May 2, 2008.  Plaintiff alleges the criminal charge was disposed of via pre-trial diversion in December of 2009.

The electronic database maintained by the Santa Rosa County Clerk of Court indicates that the conduct underlying the April 28, 2008, arrest was prosecuted in State v. Betts, Case No 2008-MM-000618.  See http://www.santarosaclerk.com (Search Court Records).  The state court docket indicates Plaintiff was arrested on April 28, 2008, on a charge of violating a domestic violence injunction, and arraigned on May 13, 2008.  Plaintiff initiated this action on January 24, 2014 (see doc. 1), more than four years after the arraignment.  Therefore, her claims against Deputy Bondovitz regarding the arrest on April 28, 2008 are time-barred.

        5.     Claims Arising from Deprivation of Firearm on May 2, 2009 by Deputy Brinkerhoff and Lieutenant Vega (Fifth Amended Complaint, ¶¶ 68, 134–39)

Plaintiff alleges that on May 2, 2009, Deputy Brinkerhoff arrived at the marital residence occupied by Mr. Betts.  She alleges Mr. Betts had a firearm in his possession that belonged to her (Plaintiff).  Plaintiff alleges Deputy Brinkerhoff took the gun into his possession, and instead of

returning it to Plaintiff, he took it to the SRCSO substation.  Plaintiff alleges she went to the substation to retrieve her weapon several days later, but Lieutenant Vega told her that the SRCSO did not have it.  Plaintiff alleges she viewed a report which stated that the firearm would be returned to Mr. Betts.  She alleges she attempted to file a missing weapon report with the SRCSO, but the SRCSO refused to take a report, even though the firearm was identified as being used in a crime on May 2, 2009.  She alleges Lieutenant Vega and Mr. Betts both deny they have possession of the firearm.[4]

Any claim challenging the constitutionality of the seizure of the firearm accrued in May of 2009, because Plaintiff admits that several days after May 2, 2009, she knew that the firearm had been taken to the SRCSO, and that the SRCSO denied having possession of the weapon.  Plaintiff waited more than four years from May of 2009 to file the present action.  Therefore, her claims against Deputy Bringerhoff and Lieutenant Vega regarding seizure/deprivation of the weapon are time-barred.

      C.      <u>Federal Claims Subject to Dismissal for Failure to State a Claim</u>

          1.      <u>Fourth Amendment Claims of False Arrest</u>

Ordinarily, "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a [§] 1983 claim, but the existence of probable cause at the time of arrest constitutes an absolute bar to a [§] 1983 action for false arrest."  <u>Case v. Eslinger</u>, 555 F.3d 1317, 1326–27 (11th Cir. 2009) (internal quotation marks and alterations omitted).  Probable cause exists "if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1079 (11th Cir. 2003) (internal quotations and alterations omitted); <u>Dahl v. Holley</u>, 312 F.3d 1228, 1233 (11th Cir. 2002).  More than "mere suspicion" is required, but "probable cause does not require convincing proof."  <u>Bailey v. Bd. Of Cnty. Comm'rs.</u>, 956 F.2d 1112, 1120 (11th Cir. 1992).  An arresting officer must conduct a reasonable investigation, but does not have to take

---

    [4] In Plaintiff's Second Amended Complaint, which she signed under penalty of perjury, she stated that deputies gave the firearm back to Mr. Betts in early May of 2009 (*see* Second Amended Complaint at 11).

"every conceivable step . . . to eliminate the possibility of convicting an innocent person." <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435–36 (11th Cir.1998) (quotation omitted).  Probable cause deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 1435 (quotation omitted).

Where a capias or warrant has issued prior to an arrest, such intervening acts "br[eak] the chain of causation for the detention from the alleged false arrest." <u>Jones v. Cannon</u>, 174 F.3d 1271, 1287 (11th Cir. 1999); *see* <u>Deville v. Marcantel</u>, 567 F.3d 156, 170 (5th Cir. 2009) (per curiam) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."); *see also* <u>Barts v. Joyner</u>, 865 F.2d 1187, 1195–96 (11th Cir. 1989).  However, the existence of a warrant will not shield an officer from liability where the warrant was secured even though "a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1553 (11th Cir. 1994) (internal quotation and citations omitted). "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." <u>Rankin</u>, 133 F.3d at 1441; *see also, e.g.,* <u>Christman v. Holmes</u>, 448 F. App'x 869, 872 (11th Cir. 2011) (unpublished) (in the absence of facts suggesting that arresting officer's reliance upon allegations of criminal complaint were unreasonable, arrestee's false arrest claim failed as a matter of law).[5]

Additionally, the Constitution prohibits an officer form making perjurious or recklessly false statements in support of a warrant. <u>Kelly</u>, 21 F.3d at 1554 (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 156, 165–71, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)).  However, the Eleventh Circuit has explicitly limited the <u>Franks</u> rule to cases of cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant; the rule does not apply to negligent misrepresentations or omissions. *Id.* (citations omitted).  Further, "even intentional or reckless

---

[5] The undersigned cites unpublished Eleventh Circuit opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997).

> a.     Statements by Deputy Hell and Lieutenant Vega in Support of Issuance of Capias on December 25, 2009 (Fifth Amended Complaint, ¶¶ 37–44, 92–94; Third Amended Complaint at 6–8; Second Amended Complaint at 10; Complaint at 4)

Plaintiff alleges on December 9, 2009, Mr. Betts reported to law enforcement that Plaintiff had stolen his iPod and adapter out of his car at his home, and that he had a video of her stealing the items. Plaintiff alleges on December 10, 2009, Deputy Hell came to her residence and questioned her about the theft. Deputy Hell told her that Mr. Betts had reported that his pink iPod with a certain serial number was missing. Plaintiff states she showed Hell that she had a pink iPod with a different serial number, and explained that it thus would not have been necessary for her to take another pink iPod which, incidentally, she and Mr. Betts had bought together. She states Deputy Hell then called Mr. Betts and asked if he was missing any other items, and Mr. Betts responded that a brake light adapter for a trailer was missing. Plaintiff alleges Deputy Hell responded, "Ok. I see it in her car." Hell then left her residence and returned to Mr. Betts's home, where Betts filled out another police report stating that Plaintiff stole the brake light adapter. Plaintiff alleges an investigation followed, including collecting footprints and fingerprints, which lasted for several days. She alleges after the investigation, Lieutenant Vega wrote a false report based upon Deputy Hell's investigation. She alleges on December 25, 2009, a capias for her arrest issued on felony charges of burglary, grand theft, and grand larceny. She alleges she was in the State of Maryland at the time, and when she returned to Florida in January of 2010, her attorney advised her to turn herself in. Plaintiff alleges she turned herself in on January 25, 2010.[6]

Plaintiff alleges Mr. Betts made false statements to Deputy Hell concerning ownership of marital property, ownership of marital automobiles, ownership of the marital residence, and the

---

[6] The electronic database maintained by the Santa Rosa County Clerk of Court indicates that the conduct underlying the capias was prosecuted in State v. Betts, Case No. 2010-CF-000118. *See* http://www.santarosaclerk.com (Search Court Records). The state court docket indicates Plaintiff was charged with one count of violation of a domestic violence injunction, one count of burglary of a structure or conveyance, and one count of petit theft. Plaintiff states she and the prosecutor agreed to a plea deal for eight months of probation, but she subsequently withdrew her plea. The state court docket indicates the charges were nolle prossed in May of 2011.

status of their marriage.[7] She alleges Deputy Hell failed to investigate who actually owned the iPod, adapter, and brake light adapter. She alleges there were no fingerprints, videotape, or any other physical evidence linking her to the crimes. She alleges Deputy Hell falsely reported that her car (in which he saw the brake light adapter) did not have a trailer hitch, when in fact it did. Plaintiff alleges Hell was grossly negligent in his investigation and fabricated the evidence (specifically, the statement that Plaintiff's vehicle did not have a trailer hitch). She alleges Deputy Hell's report was the basis for Lieutenant Vega's decision to seek the issuance of a capias for her arrest. She alleges Vega was grossly negligent for failing to investigate Deputy Hell's report.

Although Plaintiff alleges Mr. Betts provided false information to Deputy Hell, she does not allege facts suggesting Deputy Hell knew that the information was false or that his reliance upon that information was otherwise unreasonable. Further, the facts do not suggest that Deputy Hell's misstatement (that Plaintiff's vehicle did not have a trailer hitch) was perjurious or reckless, as opposed to merely negligent. Moreover, Plaintiff's factual allegations are insufficient to permit the court to draw a reasonable inference that Lieutenant Vega's reliance upon Deputy Hell's investigation and report was unreasonable or reckless. Therefore, the undersigned concludes that Plaintiff's constitutional claims regarding the issuance of a capias on December 25, 2009, should be dismissed for failure to state a claim on which relief may be granted.

b.    Arrest by Deputy Johnson in August of 2010 (Fifth Amended Complaint ¶¶ 57–63, 107–12)

Plaintiff alleges in August of 2010, while on her way to Mr. Betts's deposition, she contacted the Santa Rosa County Clerk of Court and asked whether there were any active warrants for her arrest. She alleges the Clerk of Court told her no, even though the Clerk knew that she was about to be arrested. She alleges when she attempted to park her car, Deputy Johnson grabbed her out of her car, arrested and handcuffed her, and pushed her into his patrol car. She alleges Deputy Johnson arrested her pursuant to a capias or warrant that had been issued based upon her contacting

---

[7] According to Plaintiff's factual allegations, the divorce court did not enter a final judgment regarding distribution of property and other issues until May of 2011, but Plaintiff admits that in March of 2008, the court entered a temporary order granting possession of the marital home to Mr. Betts (*see* Second Amended Complaint at 6). She also admits that at the time of Deputy Hell's investigation, Mr. Betts had a temporary domestic violence injunction against her, which remained in place until the divorce ended in 2011 (*see* Amended Complaint, ¶¶ 25–26, 30; Third Amended Complaint at 11).

Mr. Betts on June 9, 2010, in violation of the domestic violence injunction.  Plaintiff admits she contacted her husband on June 9, 2010, but she alleges her conduct did not violate the injunction because the judge who issued the order told her and Mr. Betts that they could contact each other if their children were in danger.  Plaintiff states on June 9, 2010, she received a telephone call from a man who stated he was from the Southern District of New York, and that she (Plaintiff) was required to appear in court in New York in two days.  Plaintiff states the man called again an hour later, and identified himself as Agent Garcia.  Plaintiff states the man told her that she did not have to appear in New York if she delivered $2,000 to a CVS Pharmacy in Milton at 8:00 p.m. that evening.  Plaintiff states the man told her that if she did not show up, her children would be hurt. Plaintiff alleges she considered contacting her attorney or the FBI, but it was a Saturday, and she did not believe the FBI would be available on the weekend.  So she called Mr. Betts and "warned him that the children may be in danger."  Plaintiff states Mr. Betts reported her phone call to the SRCSO, and a capias issued.

The fact that a capias issued prior to Deputy Johnson's arrest of Plaintiff defeats her false arrest claim.  *See* Jones, 174 F.3d at 1287.  Further, there are no facts suggesting Deputy Johnson submitted any information in support of the application for the capias or, if he did, that he deliberately or recklessly submitted false information or deliberately or recklessly omitted information material to a determination of probable cause.  The factual allegations of the complaint fail to state a plausible constitutional violation against Deputy Johnson.  Therefore, Plaintiff's claims against Johnson should be dismissed.

      c.    Arrest by Deputy Tucker on September 21, 2010 (Fifth Amended Complaint, ¶¶ 64–67, 89; Third Amended Complaint; attached Statement of Claim at 15–16)

Plaintiff states on September 20, 2010, at approximately midnight, she attempted to use the phone booth at a Tom Thumb gas station in Navarre, Florida, but it was broken.  She states a white male in his twenties "demanded" that she give him a ride (Third Amended Complaint, attached Statement of Claim at 15).[8]  Plaintiff states the man got into her car and "proceeded to carjack (or

---

[8] In describing this event in her Fifth Amended Complaint, Plaintiff  states the male "got into my car looking for a ride" (Fifth Amended Complaint, ¶ 64).

attempted a carjack, as he did not actually steal the vehicle)" (*id.*).  Plaintiff states the man claimed he had a gun (*id.*).[9]  She states she panicked and drove the car into a mailbox, and the man fled on foot (*id.*).  Plaintiff states she called the SRCSO, and some time later, Deputy Tucker and other deputies arrived.  She states Deputy Tucker asked her for a description of the white male, and she provided a description, which Tucker included in his report (*id.* at 15–16).  Plaintiff states she and Tucker talked about a videotape from the Tom Thumb, and Tucker mentioned the videotape in his report (Fifth Amended Complaint ¶ 65; Third Amended Complaint, Attached Statement of Claim at 16).  Plaintiff admits she never saw the videotape, but states it depicted "initial actions in this carjacking incident" (*see* Second Amended Complaint at 8).  Plaintiff alleges Deputy Tucker "was not satisfied" with her description of the white male (Third Amended Complaint, Attached Statement of Claim at 16) and "twisted" her description of the incident (Second Amended Complaint at 9). Plaintiff alleges Deputy Tucker then arrested her for making a false report and driving under the influence (Fifth Amended Complaint ¶ 65).  She alleges the DUI charge was nolle prossed, and she was placed on probation for one year, with adjudication withheld, on the false report charge (*id.*).[10]

Plaintiff's challenge to her arrest is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d (1994).  In Heck, the Supreme Court held that when a plaintiff seeks damages in a § 1983 suit, and the plaintiff was a defendant in a state criminal action, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the state conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  512 U.S. at 487.  The Supreme Court gave the following as an example of a § 1983 suit that would be barred:

---

[9] In her Fifth Amended Complaint, Plaintiff states that while the man was in her car, he "attempted to deceive me that he had a gun," and then he "demanded money and jewelry" (Fifth Amended Complaint ¶ 64).

[10] The electronic database maintained by the Santa Rosa County Clerk of Court indicates that in State v. Betts, Case No. 2010-MM-001086, Plaintiff was arrested on September 21, 2010, and released on bond the same day.  *See* http://www.santarosaclerk.com (Search Court Records).  An Information was filed on November 4, 2010, charging her with one count of making a false report to a legal authority.  Plaintiff pleaded no contest on December 3, 2010.  The court withheld adjudication and sentenced her to six months of probation.

> A state defendant is convicted of and sentenced for the crime of resisting arrest,
> defined as intentionally preventing a peace officer from effecting a *lawful* arrest . .
> . .  He then brings a § 1983 action against the arresting officer seeking damages for
> violation of his Fourth Amendment right to be free from unreasonable seizures.  In
> order to prevail in this § 1983 action, he would have to negate an element of the
> offense of which he has been convicted.  Regardless of the state law concerning res
> judicata the § 1983 action will not lie.

*Id.* at 487 n.6 (citations omitted) (emphasis in original).

Here, Plaintiff admits she was placed on probation for the charge of making a false report

to a law enforcement authority.  Under Florida law, to prove the offense of making a false report to

law enforcement, the State was required to prove that Plaintiff knowingly gave false information to

Deputy Tucker concerning the alleged commission of a crime.  *See* Fla. Stat. § 837.05(1)(a).

Because the State was required to prove as an element of the crime that Plaintiff knowingly gave

Deputy Tucker false information concerning the alleged commission of a crime on the night of

September 21, 2010, and Plaintiff argues here that Tucker did not have sufficient information to

believe that she knowingly gave him false information that night, a successful § 1983 claim against

Tucker would necessarily imply the invalidity of Plaintiff's sentence for making a false report to

Tucker.  Plaintiff has not shown that the conviction has been invalidated; therefore, her claim is

barred by <u>Heck</u> unless and until her conviction for making a false report to Tucker is overturned or

otherwise invalidated.[11]  *See* <u>Born v. Aberdeen Police Dep't</u>, No. 13-2963 (JAP)(TJB), 2014 WL

---

[11] Under Florida law, a "conviction" is defined as a determination of guilt that is the result of a plea or a trial, regardless of whether adjudication is withheld. *See* Fla. Stat. § 921.0021(2), § 960.291(3); <u>Behm v. Campbell</u>, 925 So. 2d 1070, 1072 (Fla. 5th DCA 2006) (no contest plea constituted conviction under Florida law even though adjudication was withheld, barring false arrest and battery claims stemming form arrest).  Therefore, <u>Heck</u> applies even though Plaintiff pleaded no contest, and adjudication was withheld.

Additionally, the fact that Plaintiff is not currently a prisoner or probationer does not preclude the application of <u>Heck</u> to her claim. *See* <u>Domotor v. Wennet</u>, 630 F. Supp. 2d 1368, 1380 (S.D. Fla. 2009), *aff'd*, 356 F. App'x 316 (11th Cir. 2009) (<u>Heck</u> applied even though § 1983 plaintiff was not a prisoner and thus had no recourse under habeas statute); <u>Abusaid v. Hhillsborough Cnty. Bd. of Cnty. Comm'r.</u>, 637 F. Supp. 2d 1002, 1017–19 (M.D. Fla. 2007) (same); *see also, e.g.*, <u>Drayer v. Delaware</u>, 173 F. App'x 997, 998–99 (3d Cir. 2006) (same); <u>Henry v. City of Mt. Dora</u>, No. 5:13-cv-528-Oc-30PRL, 2014 WL 5823229, at *6–9 (M.D. Fla. Nov. 10, 2014) (unpublished); <u>Baer v. Sapp</u>, No. 5:11cv248/MMP/CJK, 2011 WL 9154681, at *6 (N.D. Fla. Dec. 29, 2011), *Report and Recommendation Adopted by* <u>Baer v. Abel</u>, No. 5:11–cv–00248–MP–CJK, 2012 WL 4466349 (N.D. Fla. Sept. 26, 2012) (unpublished) (same); <u>Thro v. Bagwell</u>, No. 5:08cv120/RS/EMT, 2011 WL 3925040, at *6 (N.D. Fla. Aug. 9, 2011, *Report and Recommendation Adopted by* 2011 WL 3925031 (N.D. Fla. Sept. 7, 2011) (unpublished) (same); <u>Harris v. Milgram</u>, No. 10-0791 (RBK), 2010 WL 760584, at *12 (D.N.J. Mar. 2, 2010) (unpublished) (same); <u>Heilman v. T.W. Ponessa and Assoc.</u>, No. 4:07-cv-1308, 2008 WL 275731, at *7 (M.D. Penn. Jan. 30, 2008) (unpublished) (same); <u>Tobin v. Bodman</u>, No. 1:06-492-RBH,

2451289, at *7 (D.N.J. June 2, 2014) (unpublished) (<u>Heck</u> barred plaintiff's false arrest claim, because a judgment in her favor would necessarily imply the invalidity of her conviction for filing false reports to law enforcement authorities).

Even if Plaintiff's claims were not <u>Heck</u>-barred, her factual allegations do not suggest that the facts and circumstances within Deputy Tucker's knowledge, and of which he had reasonably trustworthy information (including his observations at the scene of Plaintiff's crash into the mail box, Plaintiff's description of the incident and the suspect, and his discussion with Plaintiff about the videotape and what it depicted), were insufficient to warrant a prudent man in believing that Plaintiff had driven under the influence and/or made a false report of a crime to law enforcement. Indeed, Plaintiff admits she did not know what was depicted in the videotape. Therefore, dismissal of Plaintiff's false arrest claim against Deputy Tucker is warranted.

   2. <u>Due Process Claims Based Upon False Arrests/Malicious Prosecution</u>

Plaintiff claims that the facts underlying her Fourth Amendment claims also state a violation of the Due Process Clause of the Fifth and Fourteenth Amendments (Fifth Amended Complaint at 49). It is well established that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See* <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citations omitted). Thus, substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id.* In the instant case, Plaintiff's false arrest claims are covered by the Fourth Amendment; therefore, her due process claims must be dismissed.

   3. <u>Equal Protection Claims</u>

Plaintiff claims that the facts underlying her Fourth Amendment claims also state a violation of the Equal Protection Clause of the Fourteenth Amendment (Fifth Amended Complaint at 50). The Equal Protection Clause of the Fourteenth Amendment requires the government to treat

---

2007 WL 1068253, at *4 (D.S.C. Mar. 29, 2007) (unpublished) (same); <u>Bilal v. City of Pensacola</u>, No. 3:05cv366/LAC/MD, 2006 WL 173692, at *6 (N.D. Fla. Jan. 24, 2006) (unpublished) (same). *But see* <u>Ray v. Judicial Corr. Serv.</u>, No. 2:12-cv-02819-RDP, 2013 WL 5428395, at *8 (N.D. Ala. Sept. 26, 2013) (unpublished) (<u>Heck</u> did not bar § 1983 action because none of the plaintiffs were incarcerated when the suit was filed and their prior stints in jail were too fleeting to permit the filing and resolution of a habeas suit).

similarly situated people alike.  *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  To state a claim under the Equal Protection Clause, a plaintiff generally must allege "that (1) [s]he is similarly situated with other [persons] who received more favorable treatment; and (2) [her] discriminatory treatment was based on some constitutionally protected interest such as race."  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted).  Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that she was treated differently from others who were similarly situated to her.  *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986).   The plaintiff must also allege that the defendant acted with the intent to discriminate against her.  *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).  The Equal Protection Clause is also implicated in "class of one" claims.  Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006).  A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).  The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination.  *Id.* at 1204–05.

In Plaintiff's 64-page complaint, she alleges only one specific instance of disparate treatment. She alleges Deputy Tucker arrested her for making a false report on September 21, 2010, and she was arrested and prosecuted for the charge, but Mr. Betts was not arrested or prosecuted for making a false report when he admitted, in June of 2006, that he lied to Deputy Reeves that Plaintiff hit him in the head with a computer monitor (Fifth Amended Complaint, ¶ 89).  Plaintiff's allegation is insufficient to satisfy the strict "similarly situated" standard of an equal protection claim.  The incidents which she compares occurred four years apart, and involved different investigating officers

faced with different facts and circumstances.  Furthermore, her allegations are insufficient to plausibly suggest that Defendants acted with the intent to discriminate against her.  Therefore, her complaint fails to state a plausible equal protection claim.

> 4.    Claims Against Sheriff Hall and SRCSO Officers Under 42 U.S.C. §§ 1985 and 1986

Plaintiff brings a conspiracy claim under 42 U.S.C. § 1985(3) against Sheriff Hall, Deputy Bondovitz, Deputy Johnson, Deputy Hell, Lieutenant Vega, Deputy Reeves, Deputy Tucker, and Deputy Bringerhoff (Fifth Amended Complaint at 23, 48–49, 56).  She also asserts a claim under 42 U.S.C. § 1986 (Fifth Amended Complaint at 23, 62).

Plaintiff's claims under § 1985(3) are barred by the intracorporate conspiracy doctrine.  "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy."  McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).  "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  Id.; accord Denney v. City of Albany, 247 F.3d 1172, 1190–91 (11th Cir. 2001) (stating "the only two conspirators identified . . . are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred plaintiffs' § 1985(3) conspiracy claims for deprivation of their equal protection rights).  The question of whether a defendant acted within the scope of his of her employment is distinct from whether the defendant acted unconstitutionally.  Grider v. City of Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010).  The scope-of-employment inquiry is "whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business."  Id.  "The doctrine applies to public entities."  Denney, 247 F.3d at 1190; see Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767–68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1985(3) conspiracy claim for interference with his civil rights).

Here, the Defendant officers were acting within the scope of their employment during their encounters with Plaintiff.  Therefore, the intracorporate conspiracy doctrine bars her claims against Sheriff Hall and the officers of the SRCSO.  *See, e.g.*, Detris v. Coats, 523 F. App'x 612, 615–16 (11th Cir. 2013) (unpublished) (intracorporate conspiracy doctrine barred arrestee's § 1983 claims against deputies in their individual capacities alleging one deputy instructed other deputies to use excessive force, and other deputies agreed to do so); Hollins v. Fulton Cnty., 422 F. App'x 828, 832 (11th Cir. 2011) (unpublished) (intracorporate conspiracy doctrine barred terminated deputy's claim that sheriff and chief deputy sheriff conspired to violated her due process rights).

Because Plaintiff failed to state a conspiracy claim under § 1985(3), she cannot sustain a claim under § 1986.  *See* Farese v. Sherer, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003) (where there is no underlying conspiracy to support a Section 1985 claim, the derivative Section 1986 claim must also fail); Park v. City of Altanta, 120 F.3d 1157, 1159–60 (11th Cir. 1997).

5.   Due Process Claim—Damage to Property (Fifth Amended Complaint, ¶¶ 141–43)

Plaintiff alleges that when Deputy Tucker arrested her on September 20, 2010, he arranged for her car to be towed to Defendant Ritchie Starr's automotive business.  Plaintiff alleges Mr. Starr is a self-proclaimed "honorary deputy" and a friend of Mr. Betts (*see* Third Amended Complaint at 16).  Plaintiff alleges she retrieved the vehicle from Mr. Starr's business the next day, and drove it ten miles to a friend's house (*id.*).  She alleges when she attempted to leave her friend's house, the car would not start (*id.*).  Plaintiff alleges she had the car towed to her mechanic, and fuel samples were taken (*id.* at 17).  She alleges USAA insurance company took possession of the samples, but subsequently lost them (*id.*).  Plaintiff admits that the car's engine had "seized" on a prior occasion in May of 2009 (*id.*).  However, she believes that the engine problem in September of 2010 was caused by Deputy Tucker and Mr. Starr's dumping paint solvent into the engine (Fifth Amended Complaint, ¶ 142).  Plaintiff claims that Tucker and Starr violated, and conspired to violate, her Fourteenth Amendment rights (Fifth Amended Complaint at 55).

As previously discussed, a constitutional claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Plausibility means "more than a sheer

possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Here, Plaintiff's allegations fail to cross the line from "sheer possibility" to plausibility that Deputy Tucker and "Auxilliary [sic] Deputy" Starr damaged the engine of her car.  Even if Plaintiff's allegations crossed the line to plausibility, they fail to state a due process claim.  The Supreme Court has unequivocally held that an unauthorized intentional deprivation of property by a state actor does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).  Under Florida law, a person may file a tort action in state court to recover damages for destruction of property. *See* Fla. Stat. § 768.28 (2011).   The existence of § 768.28 provides Plaintiff with a meaningful, post-deprivation remedy to challenge the loss of property.  Therefore, her due process claim and related conspiracy claim are foreclosed.

      6.    <u>Claims against Dr. Epstein (Fifth Amended Complaint, ¶¶ 54–55, 98, 124, 126–29)</u>

Plaintiff alleges while she was detained at the Jail form February 25, 2011 to March 16, 2011, she was under the care of Dr. Epstein.  She alleges she suffers from an autoimmune disease which requires monitoring of her platelets, and this information was in her Jail medical records. Plaintiff alleges Dr. Epstein prescribed Depakene for seizures, but she never had seizures.[12]  She alleges the nurses at the Jail told her the medication was for headaches.  Plaintiff claims that Dr. Epstein's prescription was improper, because Depakene is a "well-known destructor of platelets." She also alleges she did not receive a platelet count during her 22-day detention.  Plaintiff alleges she was sick when she arrived at the Jail on February 25, and was "near death" when she left on March 11.  She alleges several weeks after she was released, her platelets plummeted and she almost died at a local hospital in June of 2011.  Plaintiff brings claims of battery, medical negligence, and

---

[12] Plaintiff alleges the erroneous information regarding seizures may have come from Mr. Betts.

fraud against Dr. Epstein (Fifth Amended Complaint at 50–51).  She also claims that his conduct violated the Equal Protection Clause.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs.  *See* Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).  To prevail on a claim of deliberate indifference, a plaintiff must show (1) a serious medical need; (2) deliberate indifference to that need on the part of the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury.  *See* Mann v. Taser Intern, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* at 1307 (quotation omitted). Alternatively, a plaintiff can establish a serious medical need by showing that a delay in treatment worsened his or her condition.  *Id.*

To establish deliberate indifference, a plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1331–32 (11th Cir. 2013) (internal quotation marks omitted).  Indeed, to show deliberate indifference, the defendant's response to the medical must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted).  Conduct that is more than mere negligence includes:  (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all.  *See* McElliott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).  A simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference.  *See* Adams v. Poag, 61 F. 3d 1537, 1545 (11th Cir. 1995) (the question of whether a plaintiff should have received different diagnostic tests or treatments is not an appropriate basis for grounding liability on a deliberate-indifference claim); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Plaintiff's claim of medical negligence does not rise to the level of an Eighth Amendment violation.  Further, her factual allegations do not plausibly show that Dr. Epstein deliberately misstated her medical history, deliberately misdiagnosed her condition, or subjectively knew that prescribing Depakene and failing to monitor her platelets for 22 days posed a serious risk of harm to her health.  Plaintiff admits she received medical care; her complaint arises from her disagreement with Dr. Epstein's diagnosis and course of treatment.  However, complaints of this nature are insufficient to ground liability on a deliberate indifference claim.  Moreover, Plaintiff's factual allegations are wholly insufficient to state an equal protection claim.  Therefore, it is recommended that Plaintiff's federal claims against Dr. Epstein be dismissed for failure to state a claim on which relief may be granted.

> 7.    Claims Against Sheriff Hall and State Attorney Eddins (Fifth Amended Complaint, ¶¶ 68–70, 95–96, 144–58)

With regard to Sheriff Hall, Plaintiff alleges Hall is responsible for procedures, programs, policies, and practices of the SRCSO.  She alleges Hall is the employer of the other Defendants named in this lawsuit.  Plaintiff alleges Sheriff Hall is vicariously liable for the periods of her unlawful detention at the Jail (a total of 30 days throughout 2006–2011), which was caused by the unlawful conduct of his deputies.  Plaintiff also alleges Hall is responsible for the activities of the Internal Affairs Division of the SRCSO.  She alleges she attempted to report the unlawful conduct of SRCSO officers to the Internal Affairs Division, but Sheriff Hall and Lieutenant Floyd (a captain in the Internal Affairs Division) refused to speak with her or take a complaint from her.

Because the factual allegations of the Fifth Amended Complaint fail to state a plausible federal claim as to any of Sheriff Hall's subordinates, as discussed *supra*, Plaintiff cannot establish liability as to Sheriff Hall.  *See* Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

With regard to State Attorney Eddins, Plaintiff alleges he is in charge of the state prosecutors in this region.  Plaintiff alleges that on several occasions she complained about activities of one of

the prosecutors, Michele Janson, as well as Lieutenant Vega of the SRCSO.  Plaintiff further alleges the prosecutor on her felony case negligently failed to accurately investigate her criminal history. Plaintiff additionally alleges the son of the private attorney who represented her in her divorce and criminal proceedings was employed as a prosecutor in Eddins's division from 2009–2011, but her attorney failed to disclose the conflict of interest.  Plaintiff alleges she delivered letters to Mr. Eddins's office asking that he launch an investigation into the activities of some of the prosecutors in his office, but to date there has been no investigation.  She additionally alleges she attempted to file a criminal complaint with Eddins's office alleging that Mr. Betts's former attorney stole her medical records in October of 2013, but one of Eddins's investigators told her she would not be able to obtain a "medical record amendment," and then told her to leave the State Attorney's Office.

As a private citizen, Plaintiff "has no judicially cognizable interest" in the criminal prosecution of another.  Otero v. United States Attorney Gen., 832 F.2d 141 (11th Cir. 1987) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973)); see also Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (a private citizen has no authority to initiate a criminal prosecution); Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted).  Likewise, she has no federal right to an internal investigation by a state prosecutor's office.  See Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim).  Furthermore, Plaintiff's factual allegations do not state a plausible constitutional claim against any of State Attorney Eddins's subordinates; therefore, she cannot establish a basis for Eddins's liability under § 1983.  Accordingly, it is recommended that Plaintiff's claims against State Attorney Eddins be dismissed.

8.      Claims Under 42 U.S.C. § 1988

Plaintiff also brings a claim against all Defendants under 42 U.S.C. § 1988 (Fifth Amended Complaint at 63).  Section 1988 provides for attorneys fees, including expert fees, to the prevailing party in a civil rights action.  See 42 U.S.C. § 1988(b),(c).  In light of the recommendation of the undersigned that this action be dismissed in its entirety, and in light of the fact that Plaintiff is not represented by counsel in this action, Plaintiff is not entitled to an award of attorney's fees.

D.      State Law Claims

It is well established that once Plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against Defendants.  *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966).  Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.  Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)).  The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial.  *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that Plaintiff's state law claims should be dismissed to permit her to pursue them in a more appropriate forum. While it would be convenient for the Plaintiff to continue litigating her case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Plaintiff's state claims and delaying justice in other cases.  Furthermore the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.  Moreover, the supplemental jurisdiction statute contains a tolling provision.  *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc., 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted).  In Krause v. Textron Fin. Corp., 59 So.

3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have 30 days after dismissal by the federal court to re-file in state court.  *See id.* (citing 28 U.S.C. § 1367).  This is specifically "to prevent the limitations period from expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim.  *Id.* at 1091.  Therefore, Plaintiff's pursuit of her state law claims in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over her state law claims.

In light of the foregoing, the undersigned recommends that Plaintiff's state law claims be dismissed without prejudice to her pursuing them in state court.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     Plaintiff's federal claims be **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

2.     Plaintiff's state law claims be **DISMISSED** without prejudice to her pursuing them in state court.

3.     The clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 26<u>th</u> day of January 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**